FILED
IN THE 13TH COURT OF APPEALS
CORPUS CHRISTI - EDINBURG

**07/31/15**

CECILE FOY GSANGER, CLERK
BY cholloway

ACCEPTED
13-15-00166-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
7/31/2015 10:01:53 AM
CECILE FOY GSANGER
CLERK

13-15-00166-CR

RECEIVED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
7/31/2015 10:01:53 AM
CECILE FOY GSANGER
Clerk

IN THE COURT OF APPEALS
THIRTEENTH JUDICIAL DISTRICT
CORPUS CHRISTI, TEXAS

_____

JORGE LUIS GONZALEZ,

Appellant

VS.

THE STATE OF TEXAS,

Appellee

_____

ON APPEAL FROM THE 389TH DISTRICT COURT
OF HIDALGO COUNTY, TEXAS
CAUSE NUMBER CR-3747-14-H

_____

FIRST AMENDED BRIEF FOR THE APPELLANT
JORGE LUIS GONZALEZ

_____

/s/ Robert D. Puente
ROBERT D. PUENTE
LAW OFFICE OF ROBERT D. PUENTE
1315 W. POLK, STE 24
PHARR, TEXAS 78577
TEL.956- 502-5258
FAX.956-618-9904
SBN 24013359
robpuente@msn.com

ORAL ARGUMENT REQUESTED    ATTORNEY FOR APPELLANT

1

# TABLE OF INTERESTED PARTIES

Ms. Veronica Sepulveda                          State's Trial Counsel
Assistant District Attorney
100 N. Closner
Edinburg, Texas, 78539


Mr. Adolfo Al Alvarez                           Trial Counsel
Al Alvarez Law Offices
4409 N. McColl Rd.
McAllen, Texas 78504


Hon. Leticia Lopez                              Trial Court Judge
Judge Presiding
389th District Court
Hidalgo County, Texas


Robert D. Puente                                Appellant's Counsel
1315 W. Polk, Ste 24
Pharr, Texas 78577


Theodore C. Hake                                Appellee's Counsel
Assistant District Attorney
100 N. Closner
Edinburg, Texas 78539

TABLE OF CONTENTS                                    PAGE(S)

Table of Interested Parties………………………………………………….……….2

Table of Contents……………………………………………………………3

Table of Authorities………………………………………….…. 4

Statement of the Case……………………………………………….………7

Issues Presented……………………………………………………8


Summary of the Argument……………………………………………...9

Appellant's First Point of Error………………………………………….…14

Appellant's Second Point of Error……………………………………….…..19

Appellant's Third Point of Error……………………………………..….23

Conclusion and Prayer……………………………………………….…..27

Certificate of Service……………………………………………….28

Certificate of Compliance……………………………………….….………28

TABLE OF AUTHORITIES

STATE CASES                                                    PAGE

Almanza v. State, 686 S.W. 2d 157 (Tex. Crim. App. 1985)……………………..20

Brooks v. State, 323 S.W.3d 893, 895(Tex. Crim.  App. 2010) ………………..15

Clayton v. State,235 S.W.3D 772,778(Tex. Crim.App.2007) …………………..16

Evans v. State, 202 S.W.d 158, 162 n.12(Tex.Crim.App.2006).. ………………..20

Garcia v. State, 2004 WL 253570, (Tex App.-Corpus Christi) (not for publication)……………………………………………………………………20

Huizar vs. State 12 S.W. 3d 479, 484 (Tex . Crim. App.2000) ………………19,20

Hutch vs. State, 922 S.W. 2d 166, (Tex. Crim. App. 1996)……………………21.

Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct.2781, 61 L. Ed 2d 560(1979)….15

Jenkins v. State, 76 S.W. 3d 709, (Tex. App-Corpus Christi, 2002)………….17,15

Marx v. State, 141 Tex. Crim. 628, 150 S.W. 2d 1014 (1941)…………………..24

Olivarez v. State, 171 S.W. 3d 283,291 (Tex. App.-Houston [14th Dist.2005) no petition……………………………………………………………………………15,16

Poindexter v. State, 153 S.W. 3d  402, 405(Tex. Crim. App. 2005)……………15

Ramirez v. State, 65 S.W. 3d 156, (Tex. App.-Amarillo, 2001)…………………25

Rayme vs. State,178 S.W. 3d 21,25 (Tex. App-Houston [14th District]) (citing Huizar at 484.)……………………………………………………………………20

Riascos vs. State, 792S.W. 2d 754, (Tex. App.- Houston [14th Court}), 1990…………………………………………………………………....23,24, 26

Richardson v. State, 158 Tex Crim.536, 257 S.W. 2d 308(1953)………………24

Strickland v. Washington, 466 U.S. 668, 104 s. Ct. 2052, 80 L.Ed.2d 674 (1984)……………………………………………………………………………23

Temple v. State, 390 SW.3D 341, 360 (Tex. App. 2013)………………………..15

Thompson v. State, 9S.W. 3D 808, (Tex.Crim App 1999)………………………23

Wilkersen v. State, 726 S.W.2d 542,548 (Tex.Crim.App.1986) cert. denied, 480 U.S. 940,107 S.Ct.1590, 94 L.Ed 2d 779…………………………………………………………………………………23

Vaughn v. State, 931 S.W.2d 564,566 (Tex. Cr. App.1996)…………………..25

RULES:

Texas Code of Criminal Procedure 37.07, section 3(a)…………………19

Texas Rule of Evidence 404……………………………………………19

Texas Rule of Evidence 405……………………………………………19

Texas Constitution, Article 1, section 3a……………………………..25

| | | |
|---|---|---|
| JORGE LUIS GONZALEZ, | § | IN THE COURT OF |
| Appellant | § | APPEALS, 13TH |
| v. | § | JUDICIAL DISTRICT |
| THE STATE OF TEXAS, | § | CORPUS CHRISTI, TEXAS |
| Appellee | | |

## STATEMENT OF THE CASE

To the Honorable Thirteenth Court of Appeals:

Now Comes, Jorge Luis Gonzalez, appellant in the case herein, by and through Robert D. Puente, and Attorney-at-Law, and files this brief in cause number 13-15-00166-CR. The appellant was charged by way of an indictment with the offense of Possession of a Controlled Substance in cause number CR-3747-14-H. Following a jury trial in 389th District Court, Hidalgo County the appellant was found guilty of the offense as charged in the indictment. The jury assessed punishment at nine (9) years of confinement in the institutional division of the Texas Department of Corrections, with a fine of $9,000.00. Notice of appeal was filed and this appeal, alleging three points of error, has followed.

## ISSUES PRESENTED

### APPELLANTS FIRST POINT OF ERROR

The Court erred in denying Appellant's Motion for Directed Verdict as there was no evidence, or legally or factually insufficient evidence to support a finding of additional links for possession of a controlled substance, because no rational trier of fact could have found Appellant guilty of possession of a controlled substance.

### APPELLANTS SECOND POINT OF ERROR

The Court erred in omitting instruction regarding extraneous offenses and the burden of proof of beyond a reasonable doubt during the punishment phase of the trial, an omission that caused harmful error to Appellant and rendered an improper sentence.

### APPELLANTS THIRD POINT OF ERROR

Appellant was deprived of effective assistance of counsel in that trial counsel failed to object to evidence presented by the State during the punishment phase of the trial of Appellant's national origin and immigration status.

## SUMMARY OF ARGUMENT

Appellant contends that the State presented legally and factually insufficient evidence of possession of a controlled substance. The Court erred in not granting Appellant's motion for directed as a jury could not find beyond a reasonable doubt the elements of possession, to wit additional links between Appellant and the contraband alleged. The Court also erred in its omission of a jury charge instruction during the punishment phase of trial regarding the burden of proof for extraneous crimes and bad acts. Appellant was deprived of effective assistance of counsel, as counsel failed to object to improper inquiry by the State regarding Appellant's national origin and immigration status.

## STATEMENT OF FACTS

Jorge Luis Gonzalez was arrested and charged by indictment for the offense of possession of a controlled substance, to wit, cocaine, in an amount by aggregate weight of four grams or more, but less than 200 grams, alleged to have been committed on or about July 15, 2014, in Donna, Hidalgo County, Texas. CRR Volume 15, page 23, lines 21 thru 25. On or about 11:40 p.m., Officer Reynaldo Ramirez, Donna Police officer testified that he responded to a call concerning possible undocumented immigrants being held at a location at 4 Z's Mobile Home Park in Donna, Texas. CRR Vol. 13, page 114, lines 7-25. Officer Ramirez stated

that he approached the location in a marked police car and activated his overhead and left alley lights, as it was dark. CCR Volume 13, page 116, lines 16-25. He observed a gray Nissan facing the road way, with the driver side front door open and two males standing outside. Id. He also observed Appellant sitting in the front passenger seat. Id. Officer Ramirez testified that he approached the vehicle from the passenger side and observed the Appellant; the other two males fled the vehicle and ran behind the mobile home. Id. at page 118, lines 5-18. Ramirez stated that of the two males who ran, only one was apprehended. Id. at Page 134, lines 20-25. Officer Ramirez stated that he was accompanied by Officer Trevino, who sat at the passenger side; Officer Eric Perez arrived in a separate squad car, as Officer Ramirez was exiting the vehicle. Id.

Officer Ramirez exited the vehicle, identified a fourth male standing near a mattress, and began a pursuit of Appellant, who had fled. Id. Ramirez stated that Appellant ran a short distance, and stopped after Ramirez identified himself as a police officer. Id at page 119, lines 1 thru 8. Ramirez patted down Appellant, for officer safety, and found no weapons. Id. Ramirez had commanded Appellant to stop in English. Id. at page 135. Ramirez testified, over Appellant's objection, that he found U.S., Guatemalan, and Honduran currency in Appellant's front pant pocket. Id. Ramirez did not find any cocaine on Appellant at the time of the

10

apprehension. Id at page 136, lines 7-9. Ramirez stated that he detained Appellant in Ramirez's patrol car. Id at p. 121, lines 19-21.

Officer Trevino testified that he chased after two males who were standing a few yards away from the driver side door. CCR Vol. 14, page 7, lines 4-7. Trevino said he detained one; the other got away. Id. at page 8, lines 9-20. Trevino did not learn the name of the detained person, as he immediately turned the male over to the custody of the U.S. Border Patrol. Id at page 9, lines 14-24. Trevino testified that he noticed Appellant sitting in the passenger side of the vehicle as he ran after the other two males, but did not recall if Appellant's legs were inside or outside of the vehicle. Id at page 13, lines 8-12.

Ramirez then stated that he approached the gray Nissan and saw, in "plain view", a "clear corner cut baggie containing a white powdery substance" with a set of keys on it. CCR Volume 13, page 121, lines 5-8. Ramirez testified that he continued searching the vehicle, finding a clear cut baggie with a white powdery substance in the dashboard compartments, and side right front passenger handle. Id at page 122, lines 12-17. Ramirez testified that he believed the substance to be cocaine and that all the bags were in plain view from a vantage point outside of the vehicle. Id pages 122-124. Ramirez testified that more currency was found in the dashboard compartment. Id at page 125, line 8-25.

Ramirez testified that no fingerprints were taken from the clear baggies or inside of the vehicle. Id at page 136, lines 13-15. Ramirez stated that Appellant did not appear intoxicated, nor were tests run to determine if Appellant had used cocaine. Id at page 136, lines 15-18.

Investigator Flores, Donna Police Department, testified that he interrogated Appellant at the police station. CCR Volume 14, page 15, lines 24-25; page 16, lines 1-5. Flores read Appellant his Miranda rights. CCR Volume 14, page 16, lines 5-6. The warnings, Flores testified, were read to Appellant in Spanish. Id at p. 16, lines 18-22.  Flores testified that he ran a registration check on the vehicles found at the residence at the time of Appellant's arrest and the Nissan was registered to Appellant. Id. at page 18, lines 20-25. Flores stated that Appellant denied any knowledge of the drugs found when asked. Id at page 19, lines 6-7. Flores testified that Appellant stated to him that one of the males who ran consumed cocaine regularly. Id. at page 25, lines 12-16. Flores affirmed that of the three males who were pursued the night of Appellant's arrest, only the Appellant was arrested and questioned. Id. at page 27, lines 14-19.

Witness Zuni Gonzalez, a forensic expert with Texas DPS Crime Laboratory, testified that the white powdery substance found was tested and determined to be cocaine. CCR Volume 15, page 10, lines 22-25. She further

testified that the weight of the powder itself was 7.55 grams. Id at page 10, lines 22-25.

Appellant was found guilty and elected to go to the jury for punishment. At the punishment trial, Appellant filed an application for probation, with the state stipulating that he was eligible for probation as a first time offender. CCR Vol. 16, page 5, lines 4-7. Officer Reynaldo Ramirez, Donna PD, testified that a bottle with two pills and a half smoked marihuana cigarette were also found in the vehicle. CCR Vol. 16, page 9, line 23-25; page 10, lines 1-4. Hearing thumping, Officer Ramirez stated that he entered the trailer home and found 15 undocumented immigrants in a room. Id. at page 12, lines 15-20; page 15, lines 7-10. He also witnessed another five females, dressed only in bras and underwear emerge from another room. Id. at page 16, lines 1-6. Officer Ramirez, when questioned by the State, stated that Appellant was also undocumented and had an "ICE hold" or immigration-related detainer. Id. at page 16, lines 7-15.

Daniel Gonzalez, with the Hidalgo County Probation Department, testified, stating that a person who has an ICE hold will probably be deported to their country of origin. Id. at page 20, lines 7-19. He furthered added that a person who is convicted with a felony will not be allowed back to the United States. Id. The State asked Gonzalez what conditions could be fulfilled and he stated only one, which is to report to the probation office by mail. Id at page 22, line 17-21. The

State, upon a cross examination of Appellant's mother, who testified as a character witness, questioned Appellant's mother about Appellant's national origin and whether he was a United States citizen. Id. at page 36, lines 14-22.

After each side closed their respective cases during the punishment phase, the Court read the charge to the jury. CCR Volume 16, pages 42- 56. The jury charge during the punishment phase of the trial makes no mention of extraneous offenses, nor does the charge list that extraneous offenses should be proved beyond a reasonable doubt. Id.

The State, at closing, discussed that Appellant was guilty of the crimes of possession of the pills and alien smuggling. Id. at pages 56-57. The State also at closing argument discussed the violence and drugs coming in from Mexico. Id at page 58, lines 16-25. The State added:

"This is someone that's part of a criminal enterprise, a criminal enterprise that spilling into our streets, crossing into our border, and making this area unsafe for our family and our community." Id at page 60, lines 10-13.

APPELLANT'S FIRST POINT OF ERROR

THE COURT ERRED IN DENYING APPELLANT'S MOTION FOR DIRECTED VERDICT AS THERE WAS NO EVIDENCE, OR LEGALLY OR FACTUALLY INSUFFICIENT EVIDENCE TO SUPPORT A FINDING OF ADDITIONAL LINKS FOR POSSESSION OF A CONTROLLED SUBSTANCE, BECAUSE NO RATIONAL TRIER OF FACT COULD HAVE

FOUND APPELLANT GUILTY OF POSSESSION OF A CONTROLLED SUBSTANCE.

STANDARD OF REVIEW

When reviewing the legal sufficiency of the evidence, an appellate court must ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed 2d 560 (1979). See Temple v. State, 390 S.W.3d 341, 360 ( Tex. App. 2013).This review standard requires an examination of all the evidence, both properly and improperly admitted, to determine whether the cumulative force of all the evidence (direct, circumstantial, or both) supports the verdict when such evidence is viewed in the light most favorable to that verdict. Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). A single standard applies to both legal and factual sufficiency. Brooks v. State, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010).

ARGUMENT AND AUTHORITIES

To prove unlawful possession of a controlled substance, the State must prove: (1) that the accused exercised control, management, or care over the substance and (2) that the accused knew the matter possessed was contraband. Poindexter v. State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005) . When the

15

accused is not in exclusive possession of the place where the contraband is found, the State must show additional affirmative links between the accused and the controlled substance. See Jenkins v. State, 76 S.W.3d 709, (Tex App.-Corpus Christi, 2002); Olivarez v. State, 171 S.W.3d 283, 291 (Tex. App.-Houston [14th Dist.} 2005), no petition. An affirmative link generates a reasonable inference that the accused knew of the contraband's existence and exercised control over it. Olivarez at 291. The "affirmative links rule" is designed to protect the innocent bystander from being found guilty of possession of a controlled substance based solely on fortuitous proximity to someone else's contraband. Poindexter, 153 S.W.3d at 406. When the accused is not in exclusive possession of the place where the substance is found, there must be additional independent facts and circumstances that affirmatively link the accused to the contraband. *Id.*

Courts have identified the following factors as affirmative links that may establish an accused's knowing possession of a controlled substance: (1) the accused's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the accused's proximity to, and the accessibility of, the contraband; (4) whether the accused was under the influence of narcotics when arrested; (5) whether the accused possessed narcotics or other contraband when arrested; (6) whether the accused made incriminating statements when arrested; (7) whether the accused attempted to flee; (8) whether the accused made furtive gestures; (9)

whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the accused owned or had the right to possess the place where the contraband was found; (12) whether the place where the contraband was found was enclosed; (13) whether the accused was found with a large amount of cash; and (14) whether the conduct of the accused indicated a consciousness of guilt. Evans v. State, 202 S.W.d 158, 162 n.12 (Tex. Crim. App.2006). This Honorable Court, in Jenkins vs. State, underscored the previous factors, also adding other non-exclusive factors as follows: the accused had a special connection to the contraband; the occupants of the premises gave conflicting statements about relevant matters; the accused made incriminating statements connecting himself to the contraband; the quantity of the contraband; and, the accused was observed in a suspicious area under suspicious circumstances. Jenkins at 712-714.

It is the logical force of such links, rather than mere quantity, that is important in determining whether the evidence is sufficient to connect the accused to the alleged contraband. Evans at 162.

In the instant case, there was legally and factually insufficient evidence to establish additional links that could sustain a conviction for possession of a controlled substance. Appellant was on the passenger side of the automobile with the door open; two other males were on the driver's side of the vehicle. CRR, Vol.

14, pg.13, lines 8-12. The contraband was as accessible, if not more accessible to the other two males than to Appellant. Further, Appellant was not under the influence of any drugs or alcohol when arrested. Id. at pg. 136, line 15-18. While Appellant left the passenger side, he stopped as soon as the officer told him to stop. Id. at page 119, lines 1-8. He did not flee after being asked to stop, even where the police asked him to stop in English and not in Spanish, his preferred language Id.at pg.135. Contrary to the characterization of the police, the seized contraband was not in plain view: the first clear bag was under a set of keys, the other in a dash compartment with cigarettes; and the last bag on the side of the door. The police testified that the arrest was at night, near midnight, and that it was dark where the vehicle with the contraband was parked. CRR Vol.13, pages 121-125. There was no drug paraphernalia, scales, empty wrappers or any other indication of use of the controlled substance near or inside the vehicle. When interrogated, Appellant denied knowledge and ownership of the controlled substance. CRR Vol.14, pg 19, lines 6-7. The cash found may have been connected to other activities, such as the alleged alien smuggling, rather than to the possession of the controlled substance. No testimony was presented from the arresting officers that Appellant appeared nervous or conducted himself with a "consciousness of guilt" or that he made any "furtive gestures". Appellant provided police with the identity of one of the males, who Appellant believed to be the owner of the drugs, but the police did not detain

him, nor made any attempt to pursue further investigation. As a whole, the State

failed to clearly link Appellant to the drugs seized. As such, this Court should

reverse the verdict and render a verdict of not guilty.

APPELLANT'S SECOND POINT OF ERROR

THE COURT ERRED IN OMITTING INSTRUCTION REGARDING EXTRANEOUS OFFENSES AND THE BURDEN OF PROOF OF BEYOND A REASONABLE DOUBT DURING THE PUNISHMENT PHASE OF THE TRIAL, AN OMMISSION THAT CAUSED HARMFUL ERROR TO APPELLANT AND RENDERED AN IMPROPER SENTENCE.

STANDARD OF REVIEW

The Texas Code of Criminal Procedure Article 37.07, section 3(a) states the

following:

> (a)(1) ... evidence may be offered by the state and the defendant as to any
>
> matter the court deems relevant to sentencing, including but not limited to
>
> the prior criminal record of the defendant, his general reputation, his
>
> character, an opinion regarding his character, the circumstances of the
>
> offense for which he is being tried, and, notwithstanding Rules 404 and 405,
>
> Texas Rules of Evidence, *any other evidence of an extraneous crime or bad*
>
> *act that is shown beyond a reasonable doubt by evidence to have been*
>
> *committed by the defendant, or for which he could be held criminally*
>
> *responsible,* regardless of whether he has previously been charged with or
>
> finally convicted of the crime or act. (emphasis mine).

The Texas Supreme Court has clearly held that the statute requires a court to include an instruction to the jury indicating the burden of proof for the given extraneous crimes or bad act. The Court stated in Huizar, "such instruction is logically required if the jury is to consider the extraneous-offense and-bad act [sic] evidence under the statutorily prescribed reasonable-doubt standard." Huizar vs State 12 S.W.3d 479, 484 (Tex. Crim. App. 2000). The Court continued: "Section 3(a)'s requirement that the jury be satisfied of the defendant's culpability in the extraneous offenses and bad acts is the 'law applicable to the case' in the non-capital punishment context." Id. The trial court, thus, must instruct the jury that, at the punishment phase, extraneous offense and bad act evidence may only be considered if it meets the statutorily prescribed reasonable-doubt standard. Id. Because the trial court bears the responsibility to instruct the jury, the defendant is not required to make an objection or request under section 3(a) in order to preserve this type of charging error for appeal. Rayme vs. State, 178 S.W.3d 21, 25 (Tex. App.-Houston [14th District]) (citing Huizar at 484.)

The Huizar court held that once the error in the omission of the reasonable doubt instruction is identified, the error is subject to harm analysis under Almanza v. State, rather than constitutional error analysis. Huizar at 485 (citing Almanza v. State, 686 S.W2d 157 (Tex. Crim. App. 1985)) This Honorable Court cited the Almanza factors as follows: "The Almanza Court explained that errors which

result in egregious harm are those which affect "the very basis of the case," deprive the defendant of a "valuable right," or "vitally affect a defensive theory." Garcia v State, 2004 WL 253570, (Tex App.-Corpus Christi) (not for publication)( citing Almanza at 172.) The Supreme Court has summarized the factors to be applied as: 1) the charge itself; 2) the state of the evidence including contested issues and the weight of the probative evidence; 3) arguments of counsel; and, 4) any other relevant information revealed by the record of the trial as a whole. Hutch vs, State, 922 S.W2d 166, (Tex. Crim. App. 1996).

ARGUMENT AND AUTHORITIES

The punishment phase jury charge makes no reference to extraneous crimes or bad acts, nor does it make any reference to burden of proof. CCR Volume 16, pages 42-56. The charge recites primarily the eligibility for probation, conditions of probation, and parole. Id. The jury was provided no guidance as to how to consider the extraneous crimes of possession of two alleged narcotics pills, 20 undocumented aliens hiding in the trailer home, or Appellant's immigration status. Id.

The evidence of extraneous crimes was presented through the testimony of Donna Police Officer Ramirez, who testified concerning the pills and undocumented aliens. This evidence was not raised during the guilt or innocence phase. Officer Ramirez did not testify as to the elements of each of the extraneous

21

crimes, nor did he tie in Appellant directly to these crimes. Officer Ramirez admitted that he did not have a search warrant to enter the premises where the aliens were found.

The State relied heavily on these extraneous crimes in her closing. The State's prosecutor raised the spectre of a criminal enterprise, crossing the border, invading the community to commit these crimes. CRR Vol.16, page 58, lines 16-25. The State shifted the focal point of the punishment from the nonviolent possession of a controlled substance to unproven alien smuggling run by illegal aliens. As the prosecutor argued:

"This is someone that's part of a criminal enterprise, a criminal enterprise that spilling into our streets, crossing into our border, and making this area unsafe for our family and our community." CCR Vol. 16 at page 60, lines 10-13.

As the Court may note, the State tied in these unproven extraneous crimes to construct a narrative of an international drug and alien smuggling ring responsible for a crime wave. The State played on the concern for illegal immigration by raising Appellant's immigration status in its closing argument, tying in the previously cited acts. These factors were relevant in the jury's failure to consider sentencing options and its decision to impose the harsh sentence of 9 years imprisonment with 9,000 dollars in fines, a substantial departure from the minimum sentence. The jury was deprived of the proper evidentiary framework vis

a vis the burden the State carried in proving these incendiary extraneous crimes. To be sure, Appellant was egregiously harmed and deprived of a fair, statutorily mandated, punishment trial and this Court should reverse the sentence and remand this case for a new punishment trial.

APPELLANT'S THIRD POINT OF ERROR

APPELLANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL IN THAT TRIAL COUNSEL FAILED TO OBJECT TO EVIDENCE PRESENTED BY THE STATE DURING THE PUNISHMENT PHASE OF THE TRIAL OF APPELLANT'S NATIONAL ORIGIN AND IMMIGRATION STATUS.

STANDARD OF REVIEW

Texas follows the federal standard as delineated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984) in deciding whether a defendant has received effective assistance of counsel. Wilkerson v. State, 726 S.W.2d 542, 548 (Tex. Crim. App. 1986), cert. denied, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed 2d 779. Under that standard, the defendant must establish two things: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. Id. See also Thompson v. State, 9 S.W.3d 808, (Tex. Crim App 1999). Moreover, a presumption exists in favor of counsel's conduct and a defendant has the burden of disproving "that, under the

circumstances, the challenged action 'might be considered sound trial strategy."

<u>Strickland v. Washington</u>, 466 U.S. at 689, 104 S.Ct. at 2065.

ARGUMENT AND AUTHORITIES

In <u>Riascos</u>, the court examined the treatment of national origin and race in criminal cases. <u>Riascos vs State</u>, 792S.W.2d 754, (Tex. App. –Houston [14th Court}), 1990. It summarized as follows:

> Texas courts have long held that the national origin or race of the defendant is an inappropriate focal point for argument by the prosecution, particularly in light of the times. See <u>Marx v. State</u>, 141 Tex. Crim. 628, 150 S.W 2d 1014 (1941) *(*"Gentlemen of the Jury, we have this man of Germany—this man or beast ..."); <u>Richardson v. State</u>, 158 Tex Crim.536, 257 S.W.2d 308 (1953), ("This negro is a lustful animal ... he lacks the very fundamental elements of mankind.").
>
> <u>Riascos</u> at 758.

Failure to object to testimony or inquiry regarding a Defendant's nationality, or ethnicity has been determined to be ineffective assistance of counsel. In <u>Riascos</u>, the court reversed and remanded the case where defense counsel failed to object to State's introduction of evidence of Appellant's Columbian ethnicity, illegal aliens, and drug enterprise. The Court held:

> "There was no need for the case before us to have been focused on drug traffic, illegal Colombians, and extraneous offenses. The probative evidence showed a killing related to a $200 debt of an unknown character, nothing more. The State unduly inflamed the jury to the prejudice of appellant. No reasonable argument can be brought to suggest the defense allowed the events to take place in the interests of trial strategy. Competent counsel

would have immediately objected, obtained jury instruction and moved for a mistrial on each occasion. The cumulative effect of the errors pointed out by appellant is outrageous and we must remand for a new trial as to both guilt or innocence and punishment. Appellant's second point of error is sustained."

Riascos at 758-759.

The Amarillo Court of Appeals, in a case involving testimony of an undocumented Mexican national, where defense counsel did not object to such questions by the State, also held that the failure to object constituted ineffective assistance of counsel and reversed and remanded the case back to the trial court. Ramirez v. State, 65 S.W. 3d 156, (Tex. App.-Amarillo, 2001). Judge Reavis, in a concurring opinion, addressed the failure to object to national origin testimony and inquiry as follows:

"I concur with the decision that the judgment be reversed, but focus my decision on the provisions of article 1, section 3a, of the Texas Constitution entitled "Equality under the law," which provides:

Equality under the law shall not be denied or abridged because of sex, race, color, creed, or national origin. This amendment is self-operative.

During the guilt-innocence phase of the trial, the prosecutor elicited testimony from the arresting officer and another witness which, although irrelevant to the charged offense, informed the jury that appellant was an illegal alien and had returned to Texas from Mexico after a prior deportation. However, defense counsel did not object to the evidence regarding appellant's status as an illegal alien, request that the jury be instructed to disregard such evidence, or move for mistrial.

In order to sustain a contention that trial counsel's failure to object to evidence constitutes ineffective assistance of counsel, an appellant must

25

show that the trial court would have committed error in overruling such an objection. <u>Vaughn v. State</u>, 931 S.W.2d 564,566 (Tex. Cr. App. 1996)<u>.</u> Based upon the record in this case, because the constitutional provision is effective without enabling legislation and section 3a would have required the trial court to sustain an objection to the evidence that appellant was an illegal alien had trial counsel made such objection, I also conclude that appellant's first issue should be sustained."

<u>Ramirez</u> at 160.

During the punishment phase, the prosecution asked the investigating officer directly about Appellant's national origin and immigration status, without objection. CRR Vol.16, page 16, lines 7-15. The prosecution also asked, without objection, a probation officer how an illegal alien completes probation. The prosecution also asked Appellant's mother where Appellant was born and whether he was here legally. Id. at page 36, lines 14-22.

At closing, the prosecution tied Appellants nationality to a criminal enterprise that is coming over the border to harm the community.Id.at pg.60, lines 10-13. Together, similar to the fact pattern in <u>Riascos</u>, the State played the national origin card to the jury, focusing on irrelevant, unproven factors that caused the jury to sentence Appellant significantly higher than the minimum. Defense counsel did not object to this introduction of inflammatory national origin testimony. Such failure directly led to a harsh outcome. This Honorable Court should reverse and remand this matter for a new trial on guilt or innocence and punishment.

CONCLUSION AND PRAYER

Appellants prays that this Honorable court sustain his points of error and find harmful error in the errors and omissions present at this trial, both at the guilt or innocence phase and at the punishment phase. Appellant prays that this Honorable Court reverse and remand to the trial court, as requested above, or reverse and render a decision that there is legally and factually insufficient evidence for his conviction.

RESPECTFULLY SUBMITTED,

/S/ Robert D. Puente

------------------------------------
ROBERT D. PUENTE
SBN: 24013359
LAW OFFICE OF ROBERT D. PUENTE
1315 W. POLK, STE 24
PHARR, TEXAS 78577
TEL.956- 502-5258
FAX.956-655-1144
robpuente@msn.com

## CERTIFICATE OF SERVICE

I, Robert D. Puente, attorney for the appellant hereby certify that a true and correct copy of the instant brief was delivered to Theodore Hake, Assistant District Attorney, 100 N. Closner, Edinburg Texas, 78573, counsel for the appellee, by hand delivery

the 31st day of July, 2015.


____/s/_____Robert D. Puente___

Robert Puente




## CERTIFICATE OF COMPLIANCE

I, Robert D. Puente, hereby certify that the instant brief contains 5271 words.



_____/s/_____Robert D. Puente_____

Robert D.Puente